UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN EVANS,<br><br>        Plaintiff,<br><br>        v.<br><br>ANTHONY MENDONSA et al.,<br><br>        Defendants. | Civil Action No. 11-12121-DJC |

## MEMORANDUM AND ORDER

CASPER, J.                                                                                                February 12, 2015

### I.    Introduction

Plaintiff John Evans ("Evans"), proceeding *pro se*, has filed this lawsuit seeking injunctive relief against Defendants Anthony Mendonsa ("Mendonsa"), Thomas Dickhaut ("Dickhaut"), Marlene Dodge ("Dodge"), Carmen Newly ("Newly"), Angela D'Antonio ("D'Antonio") and Charles King ("King") for an alleged violation of the Eighth Amendment's prohibition against cruel and unusual punishment pursuant to 42 U.S.C. § 1983. D. 26. Following the dismissal of the claims against Dodge, Newly and D'Antonio, D. 96, Mendonsa and Dickhaut renewed their previous motion for summary judgment, D. 105, and Evans has moved for default judgment against King, D. 110. For the reasons stated below, the Court ALLOWS Mendonsa and Dickhaut's motion for summary judgment, D. 105, and DENIES Evans's motion for default judgment against King, D. 110.

## II. Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009). A *pro se* plaintiff such as Evans is entitled to a liberal reading of his allegations, even when such allegations are inartfully pled. See Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Rodi v. New Eng. Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004).

## III. Factual Background

Unless otherwise noted, the following facts are as stated in the Defendants' statement of facts, D. 107, and are undisputed by Evans.[1] Plaintiff Evans is currently incarcerated at the

---

[1] Local Rule 56.1 requires a party opposing a motion for summary judgment to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." Evans has not provided such a statement of material facts in dispute, but has filed an affidavit in support of his opposition, D. 109-2, which, in light of the fact that Evans is a *pro se* litigant, the Court has considered in determining whether there are any disputed issues of material fact.

Souza-Baranowski Correctional Center ("SBCC"). D. 107 ¶¶ 1-2. Mendonsa was the Superintendent of SBCC but left the Department of Correction in 2012. Id. ¶¶ 3-4. Defendant Thomas Dickhaut was also a former Superintendant of SBCC and is currently the Deputy Commissioner of the Prison Division of the Department of Corrections. Id. ¶¶ 3-4.

During the time relevant to Evans's claims, medical services were provided to DOC inmates by the DOC's contractual medical provider, the University of Massachusetts Correctional Health ("UMCH"). Id. ¶ 7. Pursuant to DOC/UMCH guidelines, referral to a podiatrist is made only in "those exceptional circumstances where fit [of shoes] has been determined problematic after multiple interventions or when there is a need for a custom orthotic." Id. ¶ 13. If shoes provided by the DOC, purchased by the inmate at the canteen or provided by UMCH continue to have "fit problems resulting in clinical signs," a referral shall be made to a consultation and, if special purchase is required, "UMCH should purchase shoes." Id.

Evans has suffered from foot problems since at least 2000 when he was diagnosed with planovalgus. Id. ¶ 16. In 2000, Dr. John Harris, a physician at Shattuck Hospital, ordered Evans special orthotics and recommended that he be allowed "to order his own sneakers from outside [the] institution" to accommodate them. D. 26-1 at 1. The doctor's medical notes from subsequent years, 2001 and 2005, indicate that Dr. Harris ordered that Evans be allowed by the DOC to order his own sneakers to fit his orthotics and that DOC allowed Evans to do so. Id. at 3-4; D. 106-9.

On July 15, 2010, after his move to SBCC, Evans requested permission to order sneakers from outside the institution. D. 107 ¶ 21; D. 106-9. This time, the DOC denied this request. Id. ¶ 22; D. 106-10. The DOC response letter noted that inmates had previously been allowed to order sneakers from vendors other than the canteen only if a certain size or type of sneaker

recommended by a doctor was not available from the canteen, but now the policy was that all footwear must be ordered through the canteen even if it must be done by special order. Id. The DOC further informed Evans that the only exception to this rule was when footwear was deemed "medically necessary" and, in that circumstance, "the footwear [would] be purchased and provided by [UMCH]." Id. In January 2011, Evans was evaluated by King, a podiatrist, who diagnosed him with pronation and plantar fasciitis. Id. ¶ 24; D. 106-8 at 8. Evans was seen on various dates by Dr. King between 2010 and 2012. Id. ¶ 18; D. 106-8 at 12. On January 25, 2011, SBCC's Deputy Superintendent informed Evans than UMCH had written a medical order and UMCH would purchase Evans special high top sneakers. Id. ¶¶ 25-26; D. 106-8 at 8.

Following subsequent correspondence from Evans, Mendonsa wrote to him on March 2, 2011 to explain that he had spoken with Health Service Administrator Marlene Dodge who had informed him that UMCH would pay for the "medically necessary footwear and that the order will be placed this week." Id. ¶ 29; D. 106-12. On April 14, 2011, Mendonsa wrote Evans again and stated that the specific sneaker he was requesting was no longer in stock, but that the medical department would order Converse sneakers as those sneakers would still meet Evans's needs. Id. ¶¶ 30-31; D. 106-13. The letter further provided that if the sneakers did not accommodate the orthotics, then UMCH would attempt to seek a suitable alternative. Id.

Defendants assert Evans "rejected" the Converse sneakers because the sneakers were not Adidas brand. Id. ¶ 33. Evans contends that the Converse footwear was "defective" and did not accommodate his orthotics. D. 106-8 at 9-10; D. 109-2 ¶ 6. On October 25, 2011, Evans saw Dr. King for another consultation and the podiatrist recommended Smooth-Walker sneakers and placed a medical order. D. 107 ¶ 34; D. 59-20 at 2; D. 59-21. Evans initiated this lawsuit the following month in November 2011. D. 1. Evans subsequently received the Smooth Walker

sneakers, but Defendants contend that Evans "rejected" these sneakers as well, id. ¶ 35, while Evans argues they did not accommodate his orthotics. D. 109-2 ¶¶ 5-6. Evans has testified that he suffered pain when he did not have the appropriate footwear. D. 106-8 at 14.

Throughout the relevant period, when he was contacted by Evans about this matter, Mendonsa would either respond via letter or speak with Evans at inmate "Happy Hour." Id. ¶ 46. Evans dealt mainly with Mendonsa and could not remember how many times he wrote to Dickhaut, although he could not recall Dickhaut ever telling him that he would not provide therapeutic footwear. Id. ¶¶ 48-49; D. 106-8 at 14, 16. UMCH attempted to get several, different pairs of sneakers for Evans's needs. Id. ¶ 36; D. 106-8 at 10. Eventually, following the initiation of this lawsuit, Evans received a pair of Adidas sneakers that he requested, D. 59-26 (April 2, 2012 UMCH letter indicating that DOC will allow him to get the requested Adidas sneakers), and Dr. King noted at a November 6, 2012 visit that Evans was "doing well" with the Adidas sneakers. D. 107 ¶ 44; D. 106-16 at 2.

### IV. Procedural History

Evans filed this suit on November 11, 2011, D. 1, and amended his complaint on April 2, 2012. D. 26. King did not appear and the Court entered default against him on November 16, 2012. D. 45. Evans moved for default judgment as to King, which the Court denied without prejudice, given the paucity of allegations in the amended complaint against King, and gave Evans leave to file a new motion for default judgment with a supporting affidavit and memorandum of law explaining the legal basis for entering judgment against Dr. King. D. 83. Defendants Dodge, Newly and D'Antonio moved to dismiss on April 17, 2014, D. 89, and the Court granted their unopposed motion, D. 96. Mendonsa and Dickhaut had previously moved for summary judgment, D. 64, which the Court denied without prejudice, D. 82, and

subsequently, D. 92, allowed the parties leave to take discovery. Following discovery, Mendonsa and Dickhaut, have now renewed their motion, D. 105, and Evans has renewed his motion for default judgment against King, D. 110. The Court heard the parties on the pending motions on January 13, 2015 and took these matters under advisement. D. 122.

V.    **Discussion**

   A.    **Alleged Eighth Amendment Violation**

Evans alleges a violation of the Eighth Amendment prohibition against cruel and unusual punishment based upon the Defendants' alleged failure to comply with his medical treatment plan by obtaining appropriate footwear from an outside vendor and seeks injunctive relief. D. 26 at 10. Evans alleges that Mendonsa and Dickhaut failed to provide appropriate footwear over an extended period of time and that he has been denied the opportunity to order sneakers himself from an outside vendor. D. 109 at 2. Evans alleges that Mendonsa and Dickhaut are, therefore, "delaying and/or denying treatment" in violation of the Eight Amendment. Id.

To succeed on an Eighth Amendment claim, a claim "based on medical mistreatment requires more than 'an inadvertent failure to provide adequate medical care' and must involve 'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 161 (1st Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

To prevail on a such a claim, "a prisoner must satisfy both of two prongs: (1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need." Kosilek v. Spencer, 774 F.3d 63, 83 (1st Cir. 2014). Deliberate indifference cannot be satisfied by mere substandard treatment, but by a showing that "the failure in treatment was purposeful" or by

6

"wanton disregard" that is "akin to criminal recklessness, requiring consciousness of 'impending harm, easily preventable.'" Id. (quoting Wastson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993)). Moreover, "[w]hen evaluating medical care and deliberate indifference, security considerations inherent in the functioning of a penological institution must be given significant weight." Id.

   *1.  Serious Medical Need*

To satisfy the objective prong, a plaintiff "must show that [h]e has a serious medical need for which [h]e has received inadequate treatment." Id. at 85. Mendonsa and Dickhaut do not appear to dispute that Evans's condition constitutes a serious medical need and proffered evidence indicating medical staff determined he had a "medical need for special footwear." D. 106-11 at 2; see Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990) (noting a serious medical need as one "diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"). Because the parties agree that Evans's condition constitutes a serious medical need, and because there is evidence in the record supporting same, the Court concludes that Evans' serious medical need has been shown, but turns to consider whether there is any genuine issue of material fact as to the adequacy of his treatment for this need.

As the moving parties, Mendonsa and Dickhaut bear the burden of providing evidence upon which the Court may conclude, as a matter of undisputed fact, that Evans received adequate treatment. The facts on the summary judgment record indicate that in 2000, prior to his arrival at SBCC, a physician at Shattuck Hospital recommended that Evans be given permission to order his own sneakers from outside [the] institution as a result of foot condition. D. 26-1 at 1. After his move to SBCC, between 2010 and 2012, he was seen multiple times by King, the UMCH podiatrist. Evans made his first request at SBCC seeking to purchase footwear to accommodate

7

his orthotics on July 15, 2010.  D. 107 ¶ 21. Mendonsa was responsive to these inquiries, informing Evans when UMCH has written a medical order for his footwear, when the order had been placed and when the footwear ordered was out of stock and the ordering of another brand that was expected to meet his medical needs.  Although the Defendants contend that Evans rejected some of the footwear proffered to him because they were not his preferred brand, even accepting Evans's contention that he rejected them because they did not meet his medical need, the record indicates that the DOC and UMCH were working to treat his medical need with appropriate footwear. In fact, by 2012, albeit it after the filing of this lawsuit, Evans received appropriate footwear and he does not dispute that it meets his medical needs.  D. 106-8 at 12.

To the extent that Evans points to the delay in the acquisition of suitable footwear as the delay of adequate treatment, such delay, on this record, does not establish a constitutional violation.  In Feeney, the First Circuit considered a similar issue, whether a "lengthy delay [of twenty-two months] in providing [an inmate] with orthopedic footwear" violated the Eighth Amendment.  Feeney, 464 F.3d at 162 (affirming grant of summary judgment to defendants). The Court concluded that such passage of time did not where "the delay alone—given the ongoing efforts to identify the source of appellant's pain" did not give rise to an Eighth Amendment violation.  In reaching this conclusion, the Court noted that "the correction center's medical staff was responsive to appellant's complaints, expended substantial resources trying to get to the root of his problem, and adopted other measures in an effort to alleviate his discomfort." Id. at 162-63.  Similarly here, Evans was seen on a regular basis by medical staff, including a podiatrist and multiple pairs of footwear were ordered in light of the UMCH recommendation for same to accommodate his orthotics.  Any delay in getting his footwear was caused by the first brand being out of stock and then, reading the record in the light most

favorable to Evans, by a dispute between Evans and the Defendants about the suitability of certain of the footwear that was secured for him.

Moreover, this Court cannot view the adequacy of treatment outside of the context of the DOC's security interest. Current DOC policy prohibits inmates from ordering items that are available either through the inmate canteen or through approved vendors. D. 106-15 ¶ 5. This policy, which prohibits Evans from ordering his own sneakers, was enacted to prevent the introduction of contraband and reduce gang tensions, as incoming packages increase the potential for unapproved items to enter the facility and some groups of inmates have attempted to denote gang affiliation through associations with certain brands of sneakers. Id. ¶¶ 7-8. Prison officials have a legitimate security interest in prohibiting contraband and the display of gang-related affiliations among inmate populations via this policy, which must be considered as the Court examines the contours of care provided to Evans. See Kosilek, 774 F.3d at 94-95,at (noting that deference is due to prison administrators on issues of security is appropriate unless "administrators admittedly relied on inflated data, identified a security concern only several years after refusing to provide treatment for an acknowledged medical need, and engaged in a pattern of changing positions and arguments before the court" as to these concerns) ((discussing Battista v. Clarke, 645 F.3d 449, 455 (1st Cir. 2011). Although Evans disputes the consistent enforcement of this policy, providing affidavits from several inmates who were recently allowed to order their own sneakers, D. 109-3; D. 109-4, the Officer in charge of inmate property at SBCC has attested that these sneakers were provided due to confusion over the applicable policy given the recent change in procedure, and that "inmates are not currently permitted to order medically necessary footwear through outside vendors." D. 120-2. Moreover, even if the policy has been inconsistently applied in the past, there is nothing in the record to suggest that the

9

articulated security concern was invalid or mere pretext for denying or delaying appropriate medical treatment to Evans. The record instead reflects rational concerns about the safety and integrity of facility. Moreover, even given the application of this policy, the record of care that Evans received does not reflect inadequate medical treatment.

2.     *Deliberate Indifference*

"[E]ven if medical care is so inadequate as to satisfy the objective prong, the Eighth Amendment is not violated unless prison administrators also exhibit deliberate indifference to the prisoner's needs." Kosilek, 774 F.3d at 83 (quoting Estelle, 429 U.S. at 105-06). Here, the Court concludes that Mendonsa and Dickhaut did not act with the requisite deliberate indifference to violate the Eighth Amendment.

On this record, Evans's delay in receiving sneakers, particularly given the multiple attempts by the DOC to locate acceptable sneakers for him, does not rise to the level of deliberate indifference by the Defendants. See Feeney, 464 F.3d at 160; see also Silva v. Clarke, 603 F. Supp. 2d 248, 249 (D. Mass. 2009) (dismissing an inmate's Eighth Amendment claim arising from the refusal to allow him to order sneakers from an outside catalog to address his foot issue when he was examined by several doctors and was given custom-made orthotics). Mendonsa, Evans's primary DOC contact about this matter, was responsive to the requests for the sneakers that would accommodate the orthotics prescribed by Dr. King. There was continued communications by Mendonsa, SBCC Superintendent at the time, with Evans about securing an adequate pair even after Evans found certain pairs inadequate. Eventually, it was Mendonsa who gets the Adidas sneakers that the parties do not dispute met Evans's medical needs. There is also nothing in the record to suggest that Dickhaut, a former SBCC Superintendent and now DOC Deputy Commissioner, was deliberately indifferent to Evans's medical needs and Evans

acknowledged that he dealt mainly with Mendonsa and could not recall the frequency of his attempts to contact Dickhaut about this matter. D. 109-2 at ¶¶ 48-49. Moreover, the delay in getting Evans appropriate reflected attempts to implement King's order to obtain sneakers, not a particular brand but ones that would accommodate orthotics. Feeney, 464 F.3d at 162 (noting "if it could be said that failing to provide the orthotics earlier reflected poor judgment on the part of some defendants—a matter on which we take no view—this was not an omission that could be termed deliberate indifference to serious medical needs," because in the context of not an absence of help but a choice for a particular treatment, "deliberate indifference may be found where the attention received is so clearly inadequate as to amount to a refusal to provide essential care") (quotations omitted). Moreover, that Evans was not permitted to order sneakers on his own from an outside vendor does not demonstrate deliberate indifference given the DOC's legitimate security interest in proscribing inmates from ordering items from outside vendors that might be perceived as status symbols. That is, Evans's "inability to order footwear from outside catalogs, under such circumstances, does not demonstrate medical care "so inadequate as to shock the conscience," Silva, 603 F. Supp. 2d at 251.

Having concluded that Mendonsa and Dickhaut are entitled to judgment in their favor[2] on Evans's Eighth Amendment claim, there is no basis for imposing the injunctive relief that Evans seeks in the amended complaint.[3]

---

[2] Having ruled in Mendonsa and Dickhaut's favor for the reasons articulated above, the Court need not address their other grounds for seeking summary judgment.

### B. Default Judgment Against King

On November 13, 2014, Evans renewed his motion for default judgment, D. 110, in which he provided that King was the podiatrist for all Massachusetts correctional facilities, that he had an "official duty to make sure the Plaintiff [sic] medical needs are met, and he has failed the Plaintiff those rights." Id. As the Court noted in its March 28 order, the sole reference to King in the amended complaint is that Evans had a consultation with him in January 2011, after which King wrote an order for Evans to receive orthopedic footwear. D. 26 ¶ 17. Evans's additional filing, a conclusory statement that King violated Evans's Eighth Amendment rights, D. 110, coupled with the facts alleged in the complaint, does not provide a basis upon which the Court can conclude liability should attach to King as to the Eighth Amendment, particularly in light of the Court's conclusion that Evans did not receive inadequate treatment. See Potvin v. Paul Law Office, PLLC, No. 11-CV-308-LM, 2012 WL 1903254, at *7 (D.N.H. May 25, 2012) (denying motion for default judgment after entry of default because "[e]ven in a case with an absent defendant, the court has an obligation to grant default judgment only on claims that are supported by adequate factual allegations").

Accordingly, Evans's motion for default judgment against Defendant King, D. 110, is DENIED.

### VI. Conclusion

---

[3] Although the Court fails to find an Eighth Amendment violation on this undisputed record, the Court notes Evans's repeated litigation on this issue throughout his time in DOC custody. See Evans v. Brewer, M.D. et al, No. 2001-00940 (Mass. Super. Jan. 4, 2002); Evans v. Verdini, No. 2003-3439 (Mass. Super. June 8, 2004). Upon inquiry from the Court, counsel for Defendants stated: "I would agree that he should have sneakers that fit his orthotics and fit his feet." D. 122 (Draft transcript of January 13, 2015 hearing at 19). The Court expects that the DOC's consideration of Evans's needs will comport with this conclusion should the relevant medical staff continue to conclude that he requires orthotics and sneakers to accommodate them.

For the foregoing reasons, the Court DENIES Evans's request for a preliminary injunction, D. 26, ALLOWS Defendants' motion for summary judgment, D. 105, and DENIES Evans's motion for default judgment, D. 110.[4]

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[4] Because this order is dispositive of Evans's case, the Court DENIES AS MOOT his various pre-trial motions, D. 117, D. 118 and D. 119 and the Defendants' motion to continue trial, D. 123.